

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

CRIMINAL ACTION NO.  25-CR-41-GFVT

UNITED STATES OF AMERICA                                    PLAINTIFF


V.                      **BINDING PLEA AGREEMENT**


RAMONE WELLS                                              DEFENDANT

\* \* \* \* \*

1.    Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment, charging a violation of 21 U.S.C. § 846, conspiracy to distribute 40 grams or more of fentanyl; Count 2 of the Indictment, charging a violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute 40 grams or more of fentanyl; Counts 3 and 4 of the Indictment, charging a violation of 21 U.S.C. § 841(a)(1), distribution of a mixture or substance containing a detectable amount of fentanyl; Count 6 of the Indictment, charging a violation of 18 U.S.C. § 924(c)(1)(A), possession of a firearm in furtherance of a drug trafficking crime; and Counts 7 – 8, charging violations of 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon. Pursuant to Rule 11(c)(1)(C), the United States and the Defendant agree to a specific sentence of 180 months.  Pursuant to Rule 11(c)(4), if the Court accepts this plea agreement, the agreed disposition will be included in the judgment.

2.    The essential elements of Count 1 of the Indictment are:

    (a)    That two or more persons conspired or agreed to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, under federal law;

    (b)    That at some time during the existence of the agreement, the Defendant knew the purpose of the agreement, and then deliberately joined the agreement; and

    (c)    That the amount of fentanyl was 40 grams or more.

3.    The essential elements of Count 2 of the Indictment are:

    (a)    That the Defendant knowingly and intentionally possessed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, under federal law; and

    (b)    That the Defendant intended to distribute the substance to another person; and

    (c)    That the amount of fentanyl was 40 grams or more.

4.    The essential elements of Counts 3 and 4 of the Indictment are:

    (a)    That the Defendant knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, under federal law, to another; and

    (b)    That the substance was in fact fentanyl, a controlled substance.

5.    The essential elements of Count 6 of the Indictment are:

    (a)    That the Defendant committed the drug trafficking crime as reflected in Count 2 of the Indictment; and

    (b)    That the Defendant knowingly possessed a firearm; and

    (c)    That the possession of the firearm was in furtherance of the crime of drug trafficking reflected in Count 2 of the Indictment.

6.    The essential elements of Counts 7 and 8 of the Indictment are:

(a) That the Defendant knew he had been convicted of a crime punishable by imprisonment for more than one year;

(b) That the Defendant, following the conviction, knowingly possessed a firearm;

(c) That at the time the defendant possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year; and

(d) That the firearm crossed a state line prior to the alleged possession.

7.    As to the Indictment relating to this Defendant, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a)    Beginning in November 2022, officers with the Richmond Police Department and the HIDTA/Madison County Drug Task Force, began an investigation into the drug trafficking activities of Ramone Wells, aka "Mo". The information received from confidential sources indicated that Wells and others were distributing heroin/fentanyl in Madison and Fayette counties.

(b)    In November 2023, investigators received information from an informant that an individual they knew as "Rocko" was trafficking heroin/fentanyl in Madison County under the direction of Ramone Wells, aka "Mo". Law enforcement later identified "Rocko" as Rodney Beard. The confidential informant also named several other individuals, only known by street names, that were also working for Wells. The confidential informant identified an apartment on Manna Drive, in Madison County, that was utilized as a trap/stash house by the traffickers. Investigators were also able to identify Wells' primary residence in Lexington as being on Whispering Hills Drive.

(c)    Madison County investigators began to conduct surveillance at an identified apartment on Manna Drive, in the Eastern District of Kentucky. On multiple occasions, investigators observed Wells and Beard coming and going from the apartment. Later, investigators learned that the apartment was leased to a female who was later identified as a person connected to Wells. Law enforcement also identified several other people coming and going from the apartment

3

including Atlas Young, aka "Trap," or "House". During the surveillance, investigators followed the men from the apartment and observed short stops, at multiple locations, meeting with known drug users, suspected drug dealers, and unknown individuals. They would then return to the Manna Drive location. Investigators also observed multiple people arrive at the Manna Drive apartment, stay for short periods, and leave. All of the activity observed was consistent with drug trafficking.

(d)    On December 13, 2023, investigators observed Young and another known individual leave Manna Drive and travel to an address on Moberly Avenue in Madison County. Investigators had received information from several sources that Wells was supplying narcotics at the residence. After staying a short period of time, Young and the other individual traveled to a residence on Whispering Hills Dr. in Lexington, KY. The exact location on Whispering Hills Drive was identified by investigators as Wells' residence and they had observed him at the residence.

(e)    On December 14, 2023, the investigation regarding Manna Drive culminated in several traffic stops and a search warrant of the Manna Drive apartment. Investigators were conducting surveillance and observed Rodney Beard leave Manna Drive. At approximately 5:14 pm, a traffic stop was conducted. Officers located 21.6 grams of a substance believed to be fentanyl in 34 individual plastic bag corners. One bag was located in the vehicle, and the remaining bags were found in the police cruiser after Beard was removed from the seat. Officers also seized $820 cash from Beard. The substances were submitted to the Kentucky State Police Laboratory for testing. One exhibit was found to contain .865 grams of a fentanyl/heroin mixture. The second exhibit, weighing 19.35 grams, was not tested, but is consistent with a fentanyl/heroin mixture.

(f)    As surveillance continued, at approximately 7:53 pm, officers stopped another vehicle associated with Manna Drive. The front seat passenger was identified as Atlas Young. Young was arrested on an outstanding warrant. During a search of Young, officers located multiple bags of narcotics in various areas of Young's clothing. The substances were believed to be fentanyl and cocaine. Young was also in possession of $1,871 in cash. A Glock 44 firearm was located under the front passenger seat. The substances were submitted to the Kentucky State Police Laboratory for testing and found to contain 10.403 grams of fentanyl and 1.471 grams of cocaine.

(g)    At approximately 8:53 the same day, while surveillance continued at the Manna Drive residence, officers observed 2 individuals exit a vehicle and walk into the identified apartment. Both individuals exited the apartment after a short

4

period of time and the driver of the vehicle was identified as Ramone Wells. A traffic stop was conducted. In the vehicle with Wells were two other known individuals. Wells consented to the search of the vehicle and a bag containing 15 grams of marijuana was located in the vehicle and one of the passengers admitted to the possession.

     (h)    A search warrant was then obtained for Manna Drive. During the search of the apartment, in the downstairs bathroom/laundry room, officers located approximately 98 grams packaged in 157 small bags of suspected heroin and 50 grams, packaged in 86 smaller bags of suspected fentanyl. In the kitchen, officers located a small amount of white powder believed to be a narcotic, a cutting agent, marijuana, and a silver press with powder residue. The residence appeared to be a stash house. The only furniture was an air mattress and a small table. From the investigation, Wells, Beard and Young, were identified as having come and gone from the residence on many occasions and all were present at some time on December 14, 2023.

     (i)    The suspected narcotics were sent to the Kentucky State Police Laboratory and found to contain 83.936 grams of fentanyl and 4.272 grams of cocaine.

     (j)    Subsequent to the December 2023 search warrant on Manna Drive, investigators began to receive information that Wells was still distributing controlled substances in Fayette County, in the Eastern District of Kentucky. On February 8, 2024, law enforcement utilized a confidential for a informant controlled purchase of narcotics from Wells. The confidential informant met Wells at the Marathon on Lansdowne Drive, in Fayette County. Wells arrived in a black Charger and sold a quantity of suspected fentanyl. The substance was submitted to the KSP lab and was found to contain 14.653 grams of fentanyl.

     (k)    On February 20, 2024, another controlled purchase was arranged with Wells. On this date, Wells arrived at the Marathon on Lansdowne Drive in the same black Charger. Wells sold a quantity of suspected fentanyl to the confidential informant. The substance was submitted to the KSP lab for testing and was found to contain 28.581 grams of fentanyl. During this investigation, investigators were able to identify 2 locations in Lexington associated with Wells. They identified his primary residence as a house on Whispering Hills and another possible stash house at 738 N. Broadway.

     (l)    On March 21, 2024, the confidential informant arranged to purchase an ounce of fentanyl from Wells. During surveillance, detectives observed Wells coming and going from the N. Broadway residence, in Fayette County, in the

Eastern District of Kentucky. Prior to the arranged transaction, Wells changed the arranged meeting locations. During the surveillance of the N. Broadway residence, detectives observed a female, later identified as Alaia Washington, exit the residence, travel to the new meet location, and meet with the informant at Wildcat Liquor. Washington transferred the suspected fentanyl to the informant in exchange for the buy money. The suspected fentanyl was submitted to the KSP lab for testing and was found to contain 27.944 grams of fentanyl. Washington returned to the Broadway residence.

(m)    On April 14, 2024, Search warrants were obtained for the residences at N. Broadway and Whispering Hills. During the search at N. Broadway, officers located, among other items, two high tech presses, a Glock 23 with an extended magazine, a rifle drum magazine, scales, ammunition, and a .40 caliber handgun. In the residence, officers located identification of Alaia Washington and her juvenile child. The firearms are not charged since a possessory interest is not readily provable. At Whispering Hills, officers located a Glock 30, a .45 caliber handgun, and $35,120 cash. $1420 was determined to be documented buy money used on previous buys (from the 2/20/24 and 3/21/24 transactions). The cash was located in various concealed areas in the residence.

(n)    On October 2, 2024, a search warrant was obtained for his residence on Meadowcrest Park. During the search, officers located approximately 74.8 grams of suspected fentanyl and a Glock 19 pistol hidden above a kitchen cabinet. The suspected fentanyl was submitted to the Kentucky State Police Laboratory and found to contain 72.785 grams of fentanyl. The firearm, located with the fentanyl, was loaded and confirmed as a stolen firearm.

(o)    Between November 2023, and October 2024, Wells admits that he agreed with one or more persons named in the Indictment to distribute 40 grams of more of fentanyl to other people. He further admits that he knew the substances being sold and possessed were controlled substances. He also admits that he was in possession of a firearm in furtherance of his drug trafficking.

8.    The enhanced statutory punishment for Counts 1 and 2 is imprisonment for not less than 10 years nor more than life, a fine of not more than $8,000,000 and a term of supervised release not less than 8 years. The enhanced statutory punishment for Counts 3 and 4 is imprisonment for not more than 30 years, a fine of not more than $2,000,000, and a term of supervised release of not ~~more~~ less than 6 years. The Defendant is subject to the

6

enhanced statutory punishments because he has a previous conviction for a serious drug felony. The statutory punishment for Count 6 is imprisonment for not less than 5 years and not more than life, consecutive to any other sentence, a fine of not more than $250,000, and a term of supervised release of not more than 5 years. The statutory punishment for Counts 7 and 8 is imprisonment for not more than 15 years, a fine of not more than $250,000, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, for a total of $700, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

9.      The Defendant further acknowledges, agrees, and waives any further notice pursuant to 21 U.S.C. § 851, which was filed by the United States, and stipulates that he has previously been convicted of a serious drug felony, namely Conspiracy to Distribute Heroin, by final judgment of the United States District Court, Southern District of West Virginia, Case Number 3:15-00130, in September 2015, for which he served more than 12 months imprisonment and his release from imprisonment was within 15 years of the commencement of the instant offense.

10.      The United States and the Defendant agree to the following specific sentence, which binds the Court upon acceptance of this plea agreement.

    a. The Defendant's sentence of imprisonment shall be 120 months on Counts 1, 2, 3, 4, 7, and 8 to run concurrently with each other, 60 months on Count 6, to run consecutively to Counts 1, 2, 3, 4, 7 and 8, for a total term of imprisonment of 180 months. The Defendant's term of supervised release shall be determined by the Court at sentencing. In addition to the mandatory and special conditions of supervised release listed in U.S.S.G. § 5D1.3, the conditions of supervised release shall include any additional conditions determined by the Court.

11.     The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

12.     The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment.  The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense(s) to which he/she is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he/she already has submitted. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his/her right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

13.    The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11.    The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts,

partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12.    If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

13.    This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14.    This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15.    The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this

Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
FIRST ASSISTANT
UNITED STATES ATTORNEY

Date: 1/23/26          By: _____
                           Cynthia T. Rieker
                           Assistant United States Attorney


Date: 1/23/26          _____
                       Ramone Wells
                       Defendant


Date: 1/23/26          _____
                       Derek Gordon
                       Attorney for Defendant